IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN KITCHEN DELIGHTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 13 CV 4010 |
| | ) | |
| NATIONAL RAILROAD PASSENGER CORP., | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Plaintiff American Kitchen Delights, Inc. sued Defendant National Railroad Passenger Corp., alleging Defendant fraudulently induced Plaintiff to enter into a contract by representing that Defendant would purchase 3 million pizzas over a three-year term. In the alternative, Plaintiff alleges that Defendant negligently misrepresented that it would purchase 3 million pizzas over the three-year term. Plaintiff also alleges that Defendant extended the contract by means of an oral agreement, only to breach the agreement by terminating the relationship eight months prior to its expiration. For the reasons stated herein, the Court grants Defendant's motion to dismiss Plaintiff's fraud in the inducement (Count I) and negligent misrepresentation claims (Count II) and denies Defendant's motion to dismiss Plaintiff's breach of oral contract claim (Count III).

## Facts

The following facts are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of resolving this Motion to Dismiss.[1] *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

---

[1] Plaintiff attached the written "Supply Agreement" to its original complaint but failed to attach the Supply Agreement to its Amended Complaint. However, since Defendant attached the same Supply

Plaintiff American Kitchen Delights, Inc. ("American Kitchen") is in the food preparation business and Defendant National Railroad Passenger Corp. (a/k/a "Amtrak") is in the railroad passenger transportation business. (Am. Compl. ¶¶ 4-5 (Count I).) Amtrak represented to American Kitchen that Amtrak would purchase 1 million pizzas per year over a period of three years. (*Id.* ¶ 9.) Amtrak made these representations through its employees and agents over the phone and in person at American Kitchen's facilities. (*Id.*) American Kitchen does not recall the identities of the Amtrak employees and agents who made the representations, but lists three individuals it believes made them. (*Id.*)

On or about October 1, 2007, American Kitchen entered into a written Supply Agreement with e-Gatematrix ("e-Gate"). e-Gate served as the purchasing agent for the designated purchaser, Amtrak. (*Id.* ¶ 6; Supply Agreement 1, Ex. 1 to Mem. Supp. Mot. Dismiss.) Under the terms of the Supply Agreement, American Kitchen agreed to prepare different styles of pizzas for the exclusive benefit of Amtrak for the period from October 1, 2007, until September 30, 2009, with a one-year renewal option. (Am. Compl. ¶¶ 6-7 (Count I).) The pricing and terms of the Supply Agreement were negotiated on behalf of Amtrak, and Amtrak placed orders directly with American Kitchen. (*Id.* ¶ 8.) American Kitchen charged lower prices for its pizzas based on the volume of pizzas Amtrak represented that it would purchase. (*Id.* ¶ 11.)

Around December 31, 2008, e-Gate terminated the Supply Agreement with American Kitchen. (*Id.* ¶ 9 (Count II).) On or around the same date, American Kitchen made an oral agreement with Amtrak for Amtrak to continue purchasing pizzas from American Kitchen. (*Id.*) On approximately September 30, 2009, American Kitchen and Amtrak orally agreed to a

---

Agreement to its motion to dismiss and Plaintiff refers to the Supply Agreement in its Amended Complaint, this Court may properly consider it. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

reduction in price of the pizzas in exchange for a one-year extension of the pizza production contract. (*Id*.) The terms of the oral agreement provided that Amtrak was to make an effort to purchase or "burn off" American Kitchen's inventory of pizza that it had presumably prepared for Amtrak. (*Id*. ¶ 12.) On or about January 28, 2010, Amtrak terminated the oral contract and failed to make an effort to purchase or "burn-off" American Kitchen's inventory. (*Id*. ¶¶ 11, 14.) Amtrak ordered a total of approximately 986,000 pizzas from American Kitchen. (*Id*. ¶ 12 (Count I).) Defendant now moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6).

## **Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Id.*

A complaint, however, must also allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

I.  **Fraud in the Inducement**

Amtrak moves to dismiss American Kitchen's fraud in the inducement claim, arguing that: (1) a statement of future intent is not actionable; (2) the claim is barred by the express language of the Supply Agreement; and (3) American Kitchen failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).  Amtrak's request to dismiss American Kitchen's fraud in the inducement claim is granted.

Fraud in the inducement is a form of common-law fraud.  *Lagen v. Balcor Co.*, 653 N.E.2d 968, 972 (Ill. App. Ct. 1995) (internal citation omitted).  The elements of common-law fraud in Illinois are: (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance.  *Id*.

Here, American Kitchen fails to allege that Amtrak made a false statement of material fact, which is fatal to its fraud in the inducement claim.  Amtrak's alleged representation that it planned to purchase 1 million pizzas a year was not a statement of material fact, but instead a statement of its future intention.  Under Illinois law, statements of future intention are not actionable.  *See Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 772 (Ill. App. Ct. 1992).  Even "a false representation of intention or future conduct, if not amounting to a matter of fact, is not a fraud in law."  *Roda v. Berko*, 81 N.E.2d 912, 915 (Ill. 1948); *see also Miller v. Sutliff*, 89 N.E. 651, 652 (Ill. 1909) ("A mere breach of a contract does not amount to a fraud, and neither a knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent.").  In *Ault*, the defendant's agent intended to induce the plaintiff to enter an employment contract by

misrepresenting that another employee would be terminated and the plaintiff would be assigned the terminated employee's accounts. *Ault*, 597 N.E.2d at 721. The plaintiff accepted the contract, but the defendant failed to terminate the employee or reassign the employee's accounts to the plaintiff. *Id.* Although the plaintiff "alleged the misrepresentations were knowingly false in that the defendant did not intent to terminate [the employee,]" the appellate court upheld the trial court's finding that the statement of future intention was insufficient to state a claim for fraud. *Id.* at 721-22. Similarly here, Amtrak's representation that it would purchase 1 million pizzas per year for three years was a statement of future intention and not a statement of existing fact. Thus, American Kitchen has failed to state a claim for fraud in the inducement.

American Kitchen attempts to save its claim by arguing that Amtrak's false statement of future intention is actionable under a theory of promissory fraud. In Illinois, "promissory fraud is not actionable unless it is part of a scheme to defraud[.]" *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). A scheme to defraud may be found when the fraud is "embedded in a larger pattern of deceptions or enticements," *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995), or a "breach that follows so close on the heels of the promise that the intent not to keep the promise may be inferred." *AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 798-99 (N.D. Ill. 2002). American Kitchen has not alleged any facts to suggest Amtrak engaged in a scheme to defraud. Instead, American Kitchen merely alleges Amtrak failed to keep one promise. The alleged breach also occurred nearly three years after Amtrak made the promise, not on its heels. Thus, American Kitchen fails to state a claim for promissory fraud.

American Kitchen also argues that it may proceed on its fraud claim because Amtrak possessed special knowledge about the quantity of pizzas it wanted to purchase. Statements

about "matters in the future may be actionable if it is presented as a fact about which the speaker has special knowledge." *Lillien v. Peak6 Invs., L.P.*, 417 F.3d 667, 671 (7th Cir. 2005) (internal citations omitted). The special knowledge exception applies when the defendant is "understood as having special knowledge of the matter that is not available to the plaintiff, so that his opinion becomes in effect an assertion summarizing his knowledge." *Power v. Smith*, 786 N.E.2d 1113, 1118 (Ill. App. Ct. 2003). The special knowledge exception, however, is "limited to recognized situations such as where a realtor appraises a house." *Id*. at 1118-19. Amtrak's representation of the number of pizzas it wished to purchase in the future is distinctly different from the statements by a relator or expert jeweler with specialized knowledge to appraise a house or diamond. *Id*. at 1118. Therefore, American Kitchen's reliance upon the "special knowledge" exception is also unavailing.

As an additional matter, American Kitchen's fraud in the inducement claim runs contrary to the express language in the Supply Agreement. Section 1.1 states, "Nothing in this Agreement shall be interpreted as a commitment by Company, any Customer or any Purchaser to purchase any minimum volume or dollar amount of Products from Supplier." Illinois courts have noted that "[a] party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed this contract." *Northern Trust Co., v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1103 (Ill. App. Ct. 1995). The terms of the Supply Agreement explicitly state that Amtrak makes no promise to purchase a minimum volume of pizzas.[2] Because American Kitchen merely points to a statement of future intention, cannot establish

---

[2] American Kitchen argues that Amtrak is not a party to the contract. However, Amtrak is clearly listed as a "Customer" on the first page of the Supply Agreement. *See* Supply Agreement 1, Ex. 1 to Mem. Supp. Mot. Dismiss (stating "Company's Customer(s): The National Railroad Passenger Corporation, a.k.a 'AMTRAK'").

6

promissory fraud or special knowledge, and its claim is barred by the terms of the contract, the Court dismisses its claim for fraud in the inducement.

## II. Negligent Misrepresentation

Amtrak also moves to dismiss American Kitchen's negligent misrepresentation claim. To prevail on a negligent misrepresentation claim, a plaintiff must plead and prove: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) that the party making the statement is under a duty to communicate accurate information. *Roe v. Jewish Children's Bureau of Chi.*, 790 N.E.2d 882, 893 (Ill. App. Ct. 2003). Furthermore, under Illinois law, economic losses not accompanied by personal injury or property damage due to negligent misrepresentations are only recoverable from a defendant who is in the "business of supplying information for the guidance of others in their business transactions." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 452 (Ill. 1982); *see also Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997).

Like its fraud in the inducement claim, American Kitchen's negligent misrepresentation claim must also be dismissed because American Kitchen failed to allege that Amtrak made a false statement of material fact. Instead, the basis of the claim is Amtrak's statement of intention regarding the quantity of pizzas it wanted to purchase in the future. As explained above, a statement of future intention is not a statement of material fact. *See Roda*, 81 N.E.2d at 915; *Ault*, 597 N.E.2d at 772.

Furthermore, nowhere in its amended complaint does American Kitchen allege that Amtrak was "in the business of supplying information for the guidance of others in their business

7

transactions[,]" and hence this claim is barred by the *Moorman* Doctrine. *Fireman's Fund*, 679 N.E.2d at 1199, 1201. Lastly, American Kitchen contends that the *Moorman* Doctrine does not apply because there was no contract between American Kitchen and Amtrak; the information supplied was essential; the misrepresentations came from the buyer of the product; and the misrepresentations were supplied to guide it in pricing. But American Kitchen fails to cite any authority to support such arguments. For these reasons, the Court dismisses American Kitchen's claim for negligent misrepresentation.

### III.    Breach of Oral Contract

Finally, Amtrak moves to dismiss American Kitchen's breach of oral contract claim. To state a claim for breach of contract under Illinois law, the plaintiff must establish: (1) an offer and acceptance; (2) consideration; (3) the terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damages resulting from the breach. *Penzell v. Taylor*, 579 N.E.2d 956, 961 (Ill. App. Ct. 1991). The Court holds that American Kitchen adequately alleged the necessary elements for a breach of oral contract claim.

According to the Amended Complaint, "[o]n or about September 30, 2009, American Kitchen and Amtrak orally agreed to a price reduction in exchange for a one-year extension on the production contract, commencing September 30, 2009" and Amtrak was to make an effort to purchase or "burn-off" American Kitchen's inventory. (Am. Compl. ¶¶ 10, 13 (Count III).) The oral agreement constituted an offer and acceptance between the parties. In consideration for a one-year extension of the pizza production contract, American Kitchen agreed to lower the price it charged Amtrak for the pizzas it produced. Thus, this portion of the complaint sufficiently alleges an offer and acceptance, consideration, and the terms of the contract. American Kitchen

further alleges that it "has fully performed all duties and obligations required of Plaintiff by the terms of the contract," that Amtrak breached the terms of the oral contract by terminating the contract early on or about January 28, 2010, and failing to "burn-off" the excess inventory, and that American Kitchen has "suffered damages totaling $58,975.54" as a result of Amtrak's breach. (*Id*. ¶¶ 11, 16, 17.) Accepting the allegations in the amended complaint as true, American Kitchen has sufficiently alleged a breach of oral contract claim. For this reason, the Court denies Amtrak's motion to dismiss American Kitchen's breach of oral contract claim.

## Conclusion

For the reasons herein, the Court grants in part and denies in part Defendant's motion to dismiss [9]. Plaintiff's fraud in the inducement claim (Count I) and negligent misrepresentation claim (Count II) are dismissed.

**SO ORDERED**                    **ENTER: 12/19/13**

_____
**JOHN Z. LEE**
**U.S. District Judge**